## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACOBIA DUNN,     :
         :  CIVIL ACTION
    Plaintiff,    :
         :
  v.        :
         :  NO.  12-377
B&B AUTOMOTIVE and HELM  :
ASSOCIATES, INC.,    :
         :
    Defendants.   :

### MEMORANDUM

BUCKWALTER, S.J.               June 5, 2012

   Currently pending before the Court is the Motion of Defendants B&B Automotive, Inc. and Helm Associates, Inc. (collectively "Defendants") to Remand the Case to the American Arbitration Association for binding arbitration.  For the following reasons, the Motion is granted and the Complaint is dismissed with prejudice.

## I.  FACTUAL AND PROCEDURAL HISTORY

   According to the facts set forth in the Complaint, Plaintiff Jacobia Dunn visited Defendant B&B Automotive ("Dealer") car sales dealership in Croydon, Pennsylvania on June 10, 2010.  (Compl. ¶ 7.)  The Dealer showed Plaintiff a pre-owned 2000 Mitsubishi Mirage, bearing Vehicle Identification Number JA3AY26C7YU053971 (the "Vehicle").  (Id. ¶ 8.)  The Dealer certified the vehicle's mileage to be 97,3000.  (Id. ¶ 9.)  At the time of the actual transfer of the Vehicle from Dealer to Plaintiff, however, the Vehicle's mileage was in excess of 7,000 more miles.  (Id. ¶ 10.)  In addition, prior to the formation of any agreements of sale, the Dealer

failed to inform Plaintiff that the vehicle had been a prior rental vehicle and had been involved in a collision in December 2003.  (Id. ¶ 11.)  In reliance upon the Dealer's representations, Plaintiff agreed to purchase the Vehicle by completing and signing a Retail Installment Sales Contract ("RISC") for the Vehicle, involving a sales price of $10,374.00 and a down payment of $487.00 (Id. ¶ 13.)

Subsequently, Defendant Helm Associates, Inc. ("Creditor") purchased the RISC from the Dealer.  (Id. ¶ 14.)  On September 6, 2011, Creditor sent a repossession tow truck to Plaintiff's home to repossess the Vehicle.  (Id. ¶ 15.)  The odometer rollback, past fleet history, and past accident history severely reduced or eliminated the retail value of the Vehicle at the time of purchase by Plaintiff.  (Id. ¶ 16.)

On January 24, 2012, Plaintiff initiated the current lawsuit in federal court against the Defendants.  Count I alleges violations of federal odometer law under 49 U.S.C. § 32705, et seq. (Id. ¶¶ 20–23.)  Count II claims fraud/violation of Pennsylvania Unfair Trade Practices Consumer Protection Law, 75 Pa.C.S. § 7137.  (Id. ¶¶ 24–37.)  Finally, Count III asserts breaches of express and implied warranties.  (Id. ¶¶ 38–41.)

Defendants filed the present Motion to Remand the Case to Arbitration on April 26, 2012.  Plaintiff filed her Response on May 11, 2012 and Defendants submitted a Reply Brief on May 23, 2012.  The Motion is now ripe for judicial review.

## II.    STANDARD FOR MOTION TO COMPEL ARBITRATION

Section 2 of the Federal Arbitration Act ("FAA") provides that arbitration agreements "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract."  9

U.S.C. § 2.  "The purpose of the Act was to abolish the common law rule that arbitration agreements were not judicially enforceable."  Cost Bros., Inc. v. Travelers Indem. Co., 760 F.2d 58, 60 (3d Cir. 1985).  The FAA, therefore, "preempts state law that might 'undercut the enforceability of arbitration agreements.'"  Id. (quoting Southland Corp. v. Keating, 465 U.S. 1, 16 (1984)).

The FAA creates a strong policy in favor of arbitration.  Any doubt over whether a particular dispute is covered by an arbitration agreement should be resolved in favor of arbitration.  AT& T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). Nonetheless, a court cannot order the arbitration of any claim unless the parties to a dispute have agreed to arbitration.  Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 54 (3d Cir. 2000).  Before compelling an unwilling party to arbitrate, the FAA requires the court to ensure that the dispute is arbitrable.  AT&T Techs., 475 U.S. at 648–49; John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1988) (holding that before compelling arbitration, a court must ensure that:  (1) the parties entered into a valid arbitration agreement; and (2) the dispute between the parties falls within the language of the arbitration agreement). Notably, when ruling on a motion to compel arbitration under the FAA, a court may only determine whether the merits of the case should be arbitrated or litigated, and may not consider the merits of the underlying claims.  Great W. Mtg. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997).  If a valid agreement exists and the controversy falls within its terms, then, as noted above, the clause "shall be valid, irrevocable, and enforceable," and the court must mandate arbitration.  9 U.S.C. § 2.

3

## III.    DISCUSSION

In the present case, Defendants contend that the RISC executed by the parties incorporated, by reference, an Arbitration Agreement, signed by both parties.  This Agreement gave either party the option of electing arbitration pursuant to either the rules of the American Arbitration Association or the National Arbitration Forum to resolve any disputes as per the terms of the Arbitration Agreement.  Although Defendants' counsel notified Plaintiff's counsel of their election to proceed to arbitration in this matter, Plaintiff's counsel declined to do so based on his belief that the Arbitration Agreement is invalid.  Defendants now seek enforcement of that Agreement.

To determine whether to grant a motion to compel arbitration, the court must first establish that a valid arbitration agreement exists.  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 533 (3d Cir. 2005); Brown v. City of Phila., No. Civ.A.10-2687, 2010 WL 4484630, at *4 (E.D. Pa. Nov. 9, 2010).  "This requires the court to look toward the relevant state law of contracts."  Brown, 2010 WL 4484630, at *4 (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 275 (3d Cir. 2004)).  Under Pennsylvania law, a valid contract exists when: (1) both parties manifested an intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) the agreement is supported by consideration.  See Blair v. Scott Specialty Gases, 283 F.3d 595, 603 (3d Cir. 2002).

Plaintiff, in this case, does not contest the existence of the Arbitration Agreement, which states, in pertinent part, as follows:

Any claim or dispute, whether in contract, tort or otherwise (including the

4

interpretation and scope of this clause and the arbitrability of any issue), between you and us or our employees, agents, successors or assigns, which arises out of or relates in any manner to the purchase and financing of your vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election (or the election of any such third party), be resolved by neutral, binding arbitration and not by a court action.

(Defs.' Mot. to Remand, Ex. 1.)  Nor does Plaintiff deny that she signed the Agreement, that the terms are sufficiently definite, or that the Agreement is supported by consideration.  Rather, she claims that the Agreement is invalid under two theories.  First, she asserts that Section 613(A) of the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA"), 69 P.S. § 601, et seq., requires that "[e]very installment sale contract shall be in writing and shall contain all of the agreements between the buyer and the seller relating to the installment sale of the motor vehicle sold and shall be signed by both the buyer and the seller."  69 P.S. § 613(A).  Because the Arbitration Agreement appeared only in a separate document and was not within the four corners of the RISC, Plaintiff contends that the MVSFA renders it unenforceable.  Second, she argues that, even if the MVSFA does not invalidate the Arbitration Agreement, the integration clause within the RISC precludes any consideration of any outside documents.

Both of these arguments disregard the most basic principles of contract law.  Under the Restatement (Second) of Contracts, "[a]n integrated agreement is a writing or writings constituting the final expression of one or more terms of an agreement."  Restatement (Second) of Contracts § 209(1); see also Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 436 (Pa. 2004).  Pennsylvania law clearly provides that "'where one contract refers to and incorporates the provisions of another both shall be construed together.  The Pennsylvania cases indicate that even where there is no specific reference to a prior agreement or prior agreements, several contracts

shall be interpreted as a whole and together.'" <u>Shehadi v. Ne. Nat'l Bank</u>, 378 A.2d 304, 306 (Pa. 1977) (quoting <u>Wilson v. Viking Corp.</u>, 3 A.2d 180 (Pa. Super. Ct. 1938)).  Stated differently, "[i]t is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the ascertainment of the true intent of the parties." <u>Kroblin Refrigerated Xpress, Inc. v. Pitterich</u>, 805 F.2d 96, 107 (3d Cir. 1986) (citations omitted); <u>see also</u> <u>Amin v. Lammers</u>, No. Civ.A.94-5980, 1995 WL 231048, at *4 (E.D. Pa. Apr. 18, 1995) ("[S]eparate contracts that are entered into at the same time as part of the same business action are construed together.").

Applying these principles to the present case, it is abundantly obvious that the Arbitration Agreement is not invalidated by either of Plaintiff's arguments.  The RISC was signed by all parties on June 10, 2010.  (Pl.'s Resp. Opp'n Mot. to Remand, Ex. A.)  Page four of the RISC, near the signature lines, contains a checked box with the words "Arbitration Agreement Attached" next to the box, thereby clearly alerting Plaintiff that there was, in fact, another agreement made part of the contract.  The Arbitration Agreement itself was also signed on June 10, 2010, and contained the following language further substantiating that it was intended by the parties to be part and parcel of the entire contract:

> In this Arbitration Agreement, "you" and "your" refer to the customer(s) signing below, and "we," 'us' and "our" refer to the Seller signing below.  This Arbitration Agreement is, ***by this reference, incorporated into and becomes a part of the Retail Installment Contract and/or Purchase Agreement*** between you and us signed on the date below.

(Defs.' Mot. to Remand, Ex. 1 (emphasis added).)

In complete accord with the purposes of the MVSFA—which seeks to protect purchasers

of motor vehicles from "nefarious, unscrupulous and improper practices in the financing of the sale of motor vehicles . . . which are unjustifiably detrimental to the consumer and inimical to the public welfare," 69 P.S. § 602(a)—the Arbitration Agreement was not disguised within a separate document outside the provisions of the RISC.  Rather, it was expressly included by reference and prepared so as to clearly alert the parties of their obligation to arbitrate disputes involving the RISC if so desired by either party.  Such an obligation was obvious from the contract documents to all but the most willfully blind consumers.  As such, the Court finds 69 P.S. § 613(A) does not invalidate the Arbitration Agreement.[1]

Moreover, Pennsylvania jurisprudence clearly rejects any argument that the integration clause in the RISC affects the applicability of the Arbitration Agreement.  "The presence of integration clauses in separate agreements is not a bar to the agreements being construed together

---

[1]  Plaintiff relies on the state trial court case of Newman v. Keys, 12 Pa. D. & C.2d 705 (1957) for the proposition that the MVSFA invalidates any agreement not physically within the four corners of the retail installment sales contract.  Careful review of that case, however, highlights several crucial distinctions from the present matter.  In Newman, the terms of the installment sales contract obligated the defendants to pay the costs of the automobile, financing charges, etc., in seventy-one monthly payments.  Id. at 707.  In addition to the installment sales contract, defendants executed a non-negotiable judgment in favor of the plaintiff in the full amount of the vehicle, due one day after the sale (the "one day judgment note").  Id.  The court found that the one day judgment note was collateral security given to secure performance of the obligation of the buyers in the installment sales contract.  Id. at 708.  It remarked, however, that "the installment sales contract made no reference to the one-day judgment note and hence did not 'contain all the agreements between the buyer and the seller relating to the installment sale of the motor vehicle' as required by section 13 of the act."  Id.  Accordingly, the court found that the one day judgment note was not in compliance with the MVSFA.  Id.

In the present case, unlike in Newman, the Arbitration Agreement is not collateral security that conflicts with the terms of the financing within the RISC, but rather simply dictates that any disputes relating to the RISC may be submitted to arbitration upon request of one party.  Moreover, and perhaps more importantly, the Arbitration Agreement is not wholly outside the RISC, but rather is explicitly incorporated by reference by the RISC—and thus "contain[ed]" in the RISC for purposes of the MVSFA.

as long as the agreements are part of the same business transaction." Kropa v. Cabot Oil & Gas Corp., 609 F. Supp. 2d 372, 377 (M.D. Pa. 2009) (quotations omitted); see also Neville v. Scott, 127 A.2d 755, 757 (Pa. Super. Ct. 1956) (holding that where two agreements are made as part of one transaction, they will be read together to express the essential elements of the parties' undertaking, notwithstanding the presence of an integration clause in the second agreement). The two documents at issue in this case were entered into on the same date, are intertwined by the same subject matter, and were made as part of one transaction. Under Pennsylvania contract principles, the Court must construe them together as one contract.

As Plaintiff has failed to show that the Arbitration Agreement is unenforceable, the Court deems the Agreement binding on the current dispute. Accordingly, the Court grants the Motion to Remand to Arbitration and dismisses the Complaint with prejudice.